# EXHIBIT A-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In re CHEMED CORP. SECURITIES LITIGATION | No. 1:12-cv-00028-MRB |

**NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED
SETTLEMENT, MOTION FOR ATTORNEYS' FEES,
AND SETTLEMENT HEARING**

**If you purchased Chemed Corporation ("Chemed") capital stock during the period from
February 15, 2010 through May 2, 2013, inclusive (the "Class Period"), you could get a
payment from a class action settlement.**

*A federal court authorized this Notice.*[1]  *This is not a solicitation from a lawyer.*

- Subject to the final approval of the Court, the parties to the above-captioned putative class action have reached an agreement to settle the case ("Settlement"). The Settlement will provide a $6 million settlement fund for the benefit of investors who bought Chemed capital stock during the Class Period – *i.e.*, between February 15, 2010 and May 2, 2013, inclusive.

- The Settlement resolves a lawsuit over whether Chemed and the other Defendants misled investors about certain of Chemed's business practices.  Chemed and the other Defendants have denied, and continue to deny, those allegations, and this Settlement is not an admission of any kind of wrongdoing or liability by any of the Defendants.

- If you are a Settlement Class Member, your legal rights will be affected whether you act or do not act.  Please read this Notice carefully.

---

[1] All capitalized terms not otherwise defined in this Notice have the meanings provided in the Stipulation and Agreement of Settlement executed by the parties to the above-captioned lawsuit, dated February 6, 2014 (the "Stipulation").  A copy of the Stipulation is available on the public docket of the United States District Court for the Southern District of Ohio, Western Division, under the above lawsuit caption, or at www.chemedsecuritiessettlement.com, www.labaton.com, and www.rgrdlaw.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM BY _____, 2014** | The only way to get a payment. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT BY _____, 2014** | Get no payment.  This is the only option that allows you to ever be part of any other lawsuit against Chemed and the other Releasees involving any or all of the Settled Claims. (*See* Question ___, below.) |
| **OBJECT BY _____, 2014** | Write to the Court about why you do not like the Settlement, the proposed Plan of Allocation, and/or the request for attorneys' fees and expenses. |
| **GO TO A HEARING ON _____, 2014 at ____:_____ ___.m.** | Ask to speak in Court about the Settlement, the proposed Plan of Allocation, and/or the request for attorneys' fees and expenses. |
| **DO NOTHING** | Get no payment.  If you are a Settlement Class Member, be bound by the Releases provided as part of this Settlement. Give up your rights. |

- These rights and options – and the deadlines to exercise them – are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.  Payments will be made only if the Court approves the Settlement and after any appeals are resolved.  Please be patient.

## SUMMARY OF NOTICE

### A.    Statement of Plaintiffs' Recovery

Pursuant to the Settlement described in this Notice, a Settlement Fund consisting of Six Million U.S. Dollars ($6,000,000.00) in cash, plus any accrued interest, has been established.  Lead Plaintiffs' consulting damages expert has estimated that there were approximately 9.7 million shares of Chemed capital stock traded during the Class Period that may have been damaged. Based on this estimate, the average recovery per allegedly damaged share of Chemed capital stock from the Settlement is $0.62 per share[2] before deduction of Court approved costs, such as attorneys' fees, litigation expenses, and administrative fees and expenses.  A Settlement Class

---

[2] An allegedly damaged share might have been traded more than once during the Class Period, and the indicated average recovery would be the total for all purchasers of that share.

Member's actual recovery will be a portion of the Net Settlement Fund determined by comparing that Claimant's Recognized Claim (*see* page 7) to the total Recognized Claims of all Settlement Class Members who submit timely and valid Proofs of Claim. It will depend on the number of claims submitted, when during the Class Period a Settlement Class Member purchased Chemed capital stock, the purchase price paid, and whether those shares were held throughout or sold during the Class Period, and, if sold, when they were sold and the amount received. An individual Settlement Class Member may receive more or less than this average amount per share. *See* Plan of Allocation beginning on page 7.

**B.**     **Statement of Potential Outcome of Case**

The Settling Parties disagree on both liability and damages and do not agree on the average amount of damages per share that would be recoverable if Plaintiffs were to have prevailed at trial on each claim alleged. The issues on which the Settling Parties disagree include (i) whether the statements made or facts allegedly omitted were material or otherwise actionable under the federal securities laws; (ii) the appropriate economic model for determining the amount by which Chemed's capital stock was allegedly artificially inflated (if at all) during the Class Period; (iii) the amount by which Chemed's capital stock was allegedly artificially inflated (if at all) during the Class Period; (iv) the effect of various market forces influencing the trading price of Chemed's capital stock at various times during the Class Period; (v) the extent to which external factors, such as general market and industry conditions, influenced the trading price of Chemed's capital stock during the Class Period; (vi) the extent to which the various matters that Plaintiffs alleged were materially false or misleading influenced (if at all) the trading price of Chemed's capital stock during the Class Period; and (vii) the extent to which the various allegedly adverse material facts that Plaintiffs alleged were omitted influenced (if at all) the trading price of Chemed's capital stock during the Class Period. The Defendants deny that they have violated any laws, deny that they are liable to Plaintiffs or the Settlement Class, deny that Plaintiffs or the Settlement Class have suffered any damages, and deny any and all contentions that Defendants' business, conduct and public statements constitute wrongdoing or give rise to legal liability of any kind or have caused damage.

**C.**     **Statement of Attorneys' Fees and Costs Sought**

Co-Lead Counsel will ask the Court to award them attorneys' fees of no more than 33% of the Settlement Fund and litigation expenses of no more than $200,000, incurred in connection with the prosecution of this Action, which may include a request for an award to Lead Plaintiffs for reimbursement of their reasonable costs and expenses (including lost wages) directly related to their representation of the Settlement Class. The fee and expense request may include a request for interest, at the same rate and for the same periods as earned by the Settlement Fund. If the Court approves these requests, the fees and expenses would amount to an average cost of approximately $0.22 per allegedly damaged share.

The average cost per allegedly damaged share will vary depending on the number of timely and valid claims submitted. Co-Lead Counsel have expended considerable time and effort in the prosecution of this litigation without receiving any payment, and have advanced the expenses of the litigation, such as the cost of experts, in the expectation that if they were successful in obtaining a recovery they would be paid from such recovery. In this type of litigation, it is

customary for plaintiffs' counsel to be awarded a percentage of the common fund recovered as attorneys' fees.

**D.        Further Information**

Further information regarding the Action and this Notice may be obtained by contacting Co-Lead Counsel or the Claims Administrator:

| Co-Lead Counsel | Claims Administrator |
|---|---|
| Evan J. Kaufman | *Chemed Securities Litigation* |
| Robbins Geller Rudman & Dowd LLP | Claims Administrator |
| 58 South Service Road, Suite 200 | c/o Gilardi & Co. LLC |
| Melville, NY 11747 | P.O. Box 990 |
| (800) 449-4900 | Corte Madera, CA  94976-0990 |
| | |
| Jonathan Gardner | |
| Labaton Sucharow LLP | |
| 140 Broadway, 34th Floor | |
| New York, NY 10005 | |
| (888) 219-6877 | |

**PLEASE DO NOT CONTACT THE COURT OR COUNSEL FOR DEFENDANTS ABOUT THIS SETTLEMENT**

**E.        Reasons for the Settlement**

For Lead Plaintiffs, the principal reason for the Settlement is the immediate benefit to the Settlement Class. This benefit must be compared to the risk that no recovery might be achieved after a contested trial and likely appeals, possibly years into the future.

For the Defendants, who deny any and all liability whatsoever in connection with the Action and the Settled Claims, the principal reason for the Settlement is to limit further expense, inconvenience and distraction, to dispose of the burden of protracted litigation, and to permit the operation of Chemed's business without further distraction and diversion of Chemed's executives and other personnel with respect to the matters at issue in this Action.

**BASIC INFORMATION**

**1.        Why did I get this Notice?**

You or someone in your family may have purchased Chemed capital stock during the period February 15, 2010 through May 2, 2013, inclusive.

The Court directed that this Notice be sent to Settlement Class Members because they have a right to know about a proposed settlement of this class action lawsuit, and about all their options, before the Court decides whether finally to approve the Settlement.  If the Court approves the

Settlement, and after any objections and appeals are resolved, a claims administrator appointed by the Court will make the payments that the Settlement allows.

This package explains the lawsuit, the Settlement, Settlement Class Members' legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Southern District of Ohio, Western Division. The case is known as *In re Chemed Corporation Securities Litigation*, File No. 1:12-cv-028. This case was assigned to United States District Judge Michael R. Barrett. The people who sued are called Plaintiffs, and the company and the people and entities they sued, namely, Chemed Corporation, Kevin McNamara, David Williams, and Timothy O'Toole, are called the Defendants.

## 2.     What is this lawsuit about?

This is a federal securities fraud class action that is pending before Judge Michael R. Barrett in the United States District Court for the Southern District of Ohio.

Lead Plaintiffs are the Electrical Workers Pension Fund, Local 103, I.B.E.W., and the Greater Pennsylvania Carpenters Pension Fund.

Defendant Chemed, a Delaware corporation, is a Cincinnati-based corporation whose wholly owned subsidiary, VITAS Healthcare Corporation, is one of the nation's largest hospice providers.

The operative complaint in the Action, the Second Amended Complaint, dated February 6, 2014, (the "Complaint"), alleges that Lead Plaintiffs and other Settlement Class Members purchased the capital stock of Chemed at prices artificially inflated as a result of the Defendants' alleged dissemination of allegedly materially false or misleading information. The Complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

The Defendants deny any and all liability or wrongdoing whatsoever in connection with the claims asserted in the Action as well as all claims that that could have been asserted by Lead Plaintiffs or Settlement Class Members in connection with the purchase or acquisition of Chemed's capital stock during the Class Period.

With the assistance of former Vice Chancellor of Delaware Court of Chancery Stephen Lamb acting as a mediator, Lead Plaintiffs, by their counsel, conducted lengthy discussions and arm's length negotiations with counsel for Defendants on September 16, 2013, with a view to achieving a compromise and settlement of this Action and all issues in dispute between them, and achieving the best relief possible consistent with the best interests of the Settlement Class.

Based upon their investigation, consultation with experts, and the assistance of the mediator, Co-Lead Counsel have concluded that the terms and conditions of the Settlement are fair, reasonable and adequate to Lead Plaintiffs and the Settlement Class, and in their best interests, and have agreed to settle the claims raised in the Action pursuant to the terms and provisions of the Stipulation, after considering (i) the substantial benefits that Lead Plaintiffs and the members of

the Settlement Class will receive from settlement of the Action, (ii) the attendant risks of litigation, and (iii) the desirability of permitting the Settlement to be consummated as provided by the terms of the Stipulation.

**3.**　　**Why is this a class action?**

In a class action, one or more people called class representatives (in this case the Electrical Workers Pension Fund, Local 103, I.B.E.W. and the Greater Pennsylvania Carpenters Pension Fund), sue on behalf of people who have similar claims. All these people together are a class or class members. Bringing a case, such as this one, as a class action allows the adjudication of many similar claims of different persons and entities that might be economically too small to bring in individual actions. One court resolves the issues for all class members, except those who exclude themselves from the class.

**4.**　　**Why is there a Settlement?**

The Court has not decided the case in favor of either Plaintiffs or Defendants. Instead, both sides, with the assistance of former Vice Chancellor Lamb acting as a mediator, have agreed to the Settlement. That way, Plaintiffs avoid the risks and cost of a trial, and the people affected will get compensation. Defendants also avoid the continuing costs, burdens and distractions of litigation. The Class Representatives and their attorneys think the Settlement is best for the Settlement Class.

**WHO IS IN THE SETTLEMENT**

To see if you will get any money from this Settlement, you first have to determine if you are a Settlement Class Member.

**5.**　　**How do I know if I am part of the Settlement?**

The Court directed, for the purpose of the proposed Settlement, that everyone who fits the following description is a Settlement Class Member: all persons or entities that purchased or otherwise acquired Chemed capital stock during the period from February 15, 2010 through May 2, 2013, inclusive, and who were damaged thereby.

**6.**　　**Are there exceptions to being included in the Settlement Class?**

Excluded from the Settlement Class are: (i) the Defendants; (ii) the officers and directors of Chemed, at any point during the Class Period; (iii) members of the immediate family of each of the Individual Defendants and the officers and directors of Chemed, at any point during the Class Period; (iv) any entity in which Defendants have or had a controlling interest; and (v) the legal representatives, heirs, predecessors, successors or assigns of any such excluded party. Also excluded from the Settlement Class are any putative Settlement Class Members who validly exclude themselves from the Settlement Class by timely filing a request for exclusion in accordance with the requirements set forth in this Notice.

If one of your mutual funds purchased shares of Chemed capital stock during the Class Period, that alone does not make you a Settlement Class Member. You are a Settlement Class Member

only if you directly purchased shares of Chemed capital stock during the Class Period. Check your investment records or contact your broker to see if you purchased Chemed capital stock during the Class Period.

If you **sold** Chemed capital stock during the Class Period, that alone does not make you a Settlement Class Member. You are a Settlement Class Member only if you **purchased** or otherwise acquired your shares during the Class Period.

**7.     What if I am still not sure if I am included?**

If you are still not sure whether you are included, you can ask for free help. You can call [•] or visit www.chemedsecuritiessettlement.com for more information. Or you can fill out and return the Proof of Claim form described on page 12, in Question 11, to see if you qualify.

**THE SETTLEMENT BENEFITS – WHAT YOU GET**

**8.     What does the Settlement provide?**

In exchange for the Settlement and a dismissal with prejudice of the Action, the Defendants and their insurers have agreed to create a $6 million fund to be divided, after deduction of attorneys' fees and expenses, settlement administration fees and expenses, and any applicable Taxes (the "Net Settlement Fund"), among all Settlement Class Members who timely send in valid Proof of Claim forms. Neither Defendants nor their insurers shall be liable for or required to pay to any member of the Settlement Class or Co-Lead Counsel any amount in excess of that $6 million fund.

**9.     How much will my payment be?**

Your share of the Net Settlement Fund will depend on several things, including: (i) the total amount of Recognized Losses (*see* Question 10) of other Settlement Class Members; (ii) how many shares of Chemed capital stock you purchased; (iii) how much you paid for your shares; (iv) when you bought them; and (v) whether or when you sold your shares, and, if so, for how much.

Your Recognized Loss will be calculated according to the formula shown below in the Plan of Allocation (*see* Question 10). It is unlikely that you will get a payment for all of your Recognized Loss. After all Settlement Class Members have sent in their Proof of Claim forms, the payment you get will be a *pro rata* portion of the Net Settlement Fund based on your Recognized Loss divided by the total of everyone's Recognized Losses. *See* the Plan of Allocation below for more information on your Recognized Loss.

**PLAN OF ALLOCATION OF NET SETTLEMENT FUND**

**10.     How will my claim be calculated?**

The purpose of the Plan of Allocation is to distribute settlement proceeds equitably to those Settlement Class Members who suffered economic losses resulting from the alleged misrepresentations and omissions by Defendants during the Class Period. The Court may

approve the Plan of Allocation or modify it without additional notice to the Settlement Class. Any order modifying the Plan of Allocation will be posted at www.chemedsecuritiessettlement.com, www.labaton.com, and www. rgrdlaw.com.[3]

The $6,000,000 Settlement Amount and any interest earned thereon following its funding shall be the Settlement Fund. The Settlement Fund, less all Taxes, approved costs, fees and expenses (the "Net Settlement Fund") shall be distributed to members of the Settlement Class who timely submit valid Proofs of Claim ("Authorized Claimants"). Settlement Class Members who do not submit valid Proofs of Claim will not share in the Settlement proceeds but will otherwise be bound by the terms of the Settlement, including the Releases provided to Defendants, and the Judgment entered by the Court.

The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Loss." The Recognized Loss formula is not intended to estimate the amount a Settlement Class Member might have been able to recover after trial; nor does it estimate the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Loss formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants. No distributions to Authorized Claimants who would receive less than $10.00 will be made, given the administrative expenses of processing and mailing such checks.

Payment pursuant to the Plan of Allocation, or such other plan as may be approved by the Court, shall be final and conclusive against all Authorized Claimants. The Defendants, their respective counsel, and all other Releasees will have no responsibility for or liability whatsoever for the investment of the Settlement Fund, the distribution of the Net Settlement Fund, the Plan of Allocation or the payment of any claim. Lead Plaintiffs and Co-Lead Counsel likewise will have no liability for their reasonable efforts to execute, administer, and distribute the Settlement.

The proposed Plan of Allocation reflects Lead Plaintiffs' contention – disputed by Defendants – that the price of Chemed capital stock was artificially inflated throughout the Class Period, but that parts of the inflation were removed upon various disclosures being revealed. The Defendants deny that contention and any and all allegations of wrongdoing or liability. Neither this Plan of Allocation – which was prepared by Lead Plaintiffs and Co-Lead Counsel – nor the discussion of it that follows constitutes an admission of any kind of wrongdoing or liability by any of the Defendants. Defendants and their counsel and insurers do not, and are not required to, endorse or approve this Plan of Allocation, or the methods of calculation discussed below.

### General Principles of the Plan of Allocation

The Plan of Allocation recognizes and compensates Authorized Claimants for losses allegedly caused by two disclosures of information made during Class Period that allegedly relate to Lead

---

[3] Defendants had no involvement in preparing the proposed Plan of Allocation, and will have no involvement in its implementation. Defendants bear no responsibility or liability whatsoever for the allocation, distribution, use or administration of the Settlement Fund.

Plaintiffs' allegations in the Action. First, on November 16, 2011, Bloomberg News published an article regarding a whistleblower lawsuit filed by a former VITAS employee in San Antonio, Texas. After adjusting for general equity market and comparable industry security price changes on November 16, 2011, Lead Plaintiffs' damages consultant concluded that this alleged disclosure removed $5.96 per share of alleged artificial stock price inflation at that time.

Second, after the close of trading on May 2, 2013, the Department of Justice announced that the federal government filed a lawsuit against Chemed and various wholly owned hospice subsidiaries, including Vitas Hospice Services LLC and Vitas Healthcare Corp., alleging false Medicare billings. After adjusting for general equity market and comparable industry security price changes on November 16, 2011, Lead Plaintiffs' damages consultant concluded that this alleged disclosure removed $13.97 per share of artificial stock price inflation at that time.

As described in the Plan of Allocation, no Recognized Loss shall be recognized for shares that were purchased and resold within the periods: (a) February 16, 2010 through November 15, 2011; and (b) November 16, 2011 through May 2, 2013. The Plan of Allocation also precludes a recovery for losses that are unrelated to the fraud alleged in the Action.

As provided for in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Plan of Allocation limits Recognized Losses based on the price levels of Chemed capital stock during the 90-day "lookback period" following each disclosure discussed above.

If any of the calculations below result in a negative number, (*e.g.*, a claimant's purchase price was less than a claimant's sales price under para. 1C(2)(a) or a claimant's purchase price was less than the average closing price of Chemed capital stock between November 16, 2011 and the date of sale under para. 1C(2)(b)), that negative figure shall constitute a Recognized Gain. In addition, for shares purchased and resold within the periods: (a) February 16, 2010 through November 15, 2011; and (b) November 16, 2011 through May 2, 2013, if a claimant's purchase price was less than claimant's sales price, that negative figure shall constitute a Recognized Gain. The sum of any Recognized Gains will be used to offset the sum of any Recognized Losses.

**Calculation of Recognized Loss Amounts**

1.      For shares of Chemed capital stock purchased or otherwise acquired between February 16, 2010 and November 15, 2011:

      A.      For shares held at the end of trading on February 13, 2012 (90 days after the first corrective disclosure on November 15, 2011)[4], the Recognized Loss shall be the number of shares held on that date multiplied by the lesser of:

---

[4] Pursuant to Section 21(D)(e)(1) of the PSLRA, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on

(1)  $5.96 per share; or

(2)  the difference between the purchase price per share and $53.25.

B.  For shares sold between February 16, 2010 and November 15, 2011, there shall be no Recognized Loss.

C.  For shares sold between November 16, 2011 and February 13, 2012, the Recognized Loss shall be the lesser of:

(1)  $5.96 per share; or

(2)  the lesser of (a) the difference between the purchase price per share and the sales price per share; or (b) the difference between the purchase price per share and the average closing price of Chemed capital stock between November 16, 2011 and the date of sale.[5]

2.  For shares of Chemed capital stock purchased or otherwise acquired between November 16, 2011 and May 2, 2013:

A.  For shares held at the end of trading on July 31, 2013 (90 days after the second corrective disclosure on May 2, 2013)[6], the Recognized Loss shall be the number of shares held on that date multiplied by the lesser of:

(1)  $13.97 per share; or

(2)  the difference between the purchase price per share and $71.11.

---

which the information correcting the misstatement or omission that is the basis for the action is disseminated." $53.25 was the mean closing price of Chemed capital stock during the 90-day period beginning on November 16, 2011 and ending on February 13, 2012.

[5] Pursuant to Section 21(D)(e)(2) of the PSLRA, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, if the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security." The average closing price of Chemed capital stock between November 16, 2011 and each trading date through February 13, 2012 is found on Table A.

[6] *See* footnote 4 for an explanation of the relevant statutory provision. $71.11 was the mean closing price of Chemed capital stock during the 90-day period beginning on May 3, 2013 and ending on July 31, 2013.

B.    For shares sold between November 16, 2011 and May 2, 2013, there shall be no Recognized Loss.

C.    For shares sold between May 3, 2013 and July 31, 2013, the Recognized Loss shall be the lesser of:

(1)    $13.97 per share; or

(2)    the lesser of (a) the difference between the purchase price per share and the sales price per share; or (b) the difference between the purchase price per share and the average closing price of Chemed capital stock between May 3, 2013 and the date of sale.[7]

**Additional Principles**

For purposes of determining whether a Claimant has a Recognized Loss, purchases, acquisitions, and sales of Chemed capital stock will be matched on a First In/First Out ("FIFO") basis.  If a Claimant has more than one purchase/acquisition or sale of Chemed capital stock during the Class Period, all purchases/acquisitions and sales of Chemed capital stock shall be matched using FIFO.  Class Period sales will be matched first against any holdings at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisitions made during the Class Period.

The receipt or grant by gift, inheritance, or operation of law of Chemed capital stock during the Class Period shall not be deemed a purchase, acquisition, or sale of such security for the calculation of a Claimant's Recognized Loss.

To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the Authorized Claimant's Recognized Loss.  If, however, the amounts in the Net Settlement Fund are not sufficient to permit payment of the total of all Recognized Losses, then each Authorized Claimant will be paid the percentage of the Net Settlement Fund that each Authorized Claimant's recognized claim bears to the total of the claims of all Authorized Claimants ("*pro rata* share").

If the funds remaining in the Settlement Fund following *pro rata* distribution(s) to all Authorized Claimants are an amount that is not cost effective or efficient to redistribute to Authorized Claimants, then such remaining funds, after payment of any further Notice and Administration Expenses, Taxes and Tax Expenses, shall be contributed to the Legal Aid Society of Greater Cincinnati, a non-sectarian, not-for-profit, 501(c)(3) organization.

---

[7] *See* footnote 5 for an explanation of the relevant statutory provision.  The average closing price of Chemed capital stock between May 3, 2013 and each trading date through July 31, 2013 is found on Table A.

### HOW YOU GET A PAYMENT – SUBMITTING A PROOF OF CLAIM FORM

**11.** **How can I get a payment?**

To qualify for a payment, you must timely submit a valid Proof of Claim form.  A Proof of Claim form is being circulated with this Notice.  You may also get a Proof of Claim form on the internet at www.chemedsecuritiessettlement.com.  Read the instructions carefully, fill out the Proof of Claim Form, include copies of all the documents the form asks for, sign it, and mail it, together with all necessary documents, **postmarked or received no later than [DATE]**, to:

*Chemed Corporation Securities Litigation Claims*

Claims Administrator
c/o Gilardi & Co. LLC
P.O. Box 990
Corte Madera, CA  94976-0990

**12.** **When would I get my payment?**

The Court will hold a hearing on __:__ _.m. on _____, 2014, to decide whether to approve the Settlement.  If the Court approves the Settlement, after that there may also be appeals.  It is always uncertain whether and when these appeals can be resolved, and resolving them can take time, perhaps more than a year.  It also takes time for all the Proofs of Claim to be processed.  Please be patient.

**13.** **What am I giving up to get a payment or by staying in the Settlement Class?**

If you are a Settlement Class Member, then, unless you exclude yourself, you are staying in the Settlement Class and that means that, upon the "Effective Date" of the Settlement, you will release all "Settled Claims" (as defined below) against the "Releasees" (as defined below), fully and finally, and with prejudice.

"Settled Claims" means any and all claims (including any claim that the Stipulation was fraudulently induced), debts, demands, rights, actions, suits, causes of action or liabilities whatsoever (including, but not limited to, any and all claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory, or common law, or any other law, rule or regulation (whether foreign or domestic), whether class or individual in nature, including both known claims and Unknown Claims, (i) that have been asserted in this Action by or on behalf of the Settlement Class Members or any of them against any of the Releasees (including without limitation all claims and allegations in the Complaint, the Amended Complaint and/or the Second Amended Complaint), or (ii) that could have been asserted in any forum by or on behalf of the Releasors now or in the future, or any of them, against any of the Releasees or Defendants' Counsel that relate to, or that in any way arise out of, or are based upon, the allegations, transactions, facts, matters or occurrences, acts, disclosures, statements, representations, omissions, or failures to act involved, set forth, or referred to in any of the complaints or

proposed complaints filed in this Action, including but not limited to the Complaint, the Amended Complaint and/or the Second Amended Complaint, and that relate to the purchase, acquisition, or sale of the capital stock of Chemed during the Class Period.  For the avoidance of doubt, Settled Claims do not include: (i) claims to enforce the Settlement; (ii) *KBC Asset Management NV, et al. v. Kevin J. McNamara, et al.*, No. 13-cv-01854-UNA (D. Del.); (iii) *North, et al. v.  Kevin J. McNamara, et al.*, No. 1:13-cv-00833-MRB (S.D. Ohio); and (iv) any governmental or regulatory agency's claims in, or any right to relief from, any criminal or civil action against any of the Releasees.

"Releasees" refers jointly and severally, individually and collectively to Individual Defendants, Chemed, and its past, present, and future direct and indirect parents, subsidiaries, divisions and affiliates, and their respective present and former officers, directors, employees, managers, agents, insurers, attorneys and legal representatives, and the predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with Chemed.  The Releasees are express third-party beneficiaries of the Stipulation and Agreement of Settlement.

"Unknown Claims" means any and all Settled Claims which any Lead Plaintiff or Releasor does not know or suspect to exist in his, her or its favor at the time the release of the Releasees, and any Settled Defendants' Claims which any Defendant or Releasee does not know or suspect to exist in his, her or its favor, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement.  With respect to any and all Settled Claims and Settled Defendants' Claims, the Settling Parties stipulate and agree that upon the Effective Date, the Lead Plaintiffs and the Defendants shall expressly waive, and each Releasor and Releasee shall be deemed to have waived, and by operation of the Judgment or Alternative Judgment shall have expressly waived, any and all provisions, rights and benefits of conferred by any law of any state or territory of the United States, or principle of common law, which is similar comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Releasors may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Settled Claims, but each of them hereby stipulates and agrees that the Lead Plaintiffs, and each Releasor shall be deemed to settle and release, and upon the Effective Date and by operation of the Judgment or Alternative Judgment shall have settled and released, fully, finally, and forever, and all Settled Claims against Releasees, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or which heretofore existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent or intentional and with or without malice, or a breach

of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Similarly, Defendants may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of Settled Defendants' Claims, but each of them hereby stipulates and agrees that Defendants, and Releasees shall be deemed upon the Effective Date and by operation of the Judgment or Alternative Judgment, to have fully, finally, and forever settled and released any and all Settled Defendants' Claims against Releasors, known or unknown, suspected or unsuspected contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Lead Plaintiffs and Defendants acknowledge, and all other Releasors and Releasees by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key element of the Settlement.

The "Effective Date" of the Settlement will occur when an Order by the Court approving the Settlement becomes Final and is not subject to appeal, as set out more fully in the Stipulation. The Stipulation is on file with the Court and available at www.chemedsecuritiessettlement.com, www.labaton.com, and www.rgrdlaw.com.

If you are a Settlement Class Member and you stay in the Settlement Class, all of the Court's orders will apply to you and will legally bind you.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this Settlement, and you want to keep any right you may have to sue or continue to sue the Defendants and the other Releasees on your own in connection with any part of the Settled Claims, then you must take steps to exclude yourself from the Settlement Class.  This is called "opting out" or seeking exclusion from the Settlement Class.  Defendants may withdraw from and terminate the Settlement if Settlement Class Members who purchased in excess of a certain amount of Chemed capital stock exclude themselves from the Settlement Class.

**14.** **How do I get out of the proposed Settlement?**

To exclude yourself from the Settlement Class, you must send a written, signed letter by mail stating that you request to be "excluded from the Settlement Class in *In re Chemed Corporation Securities Litigation*, File No. 1:12-cv-028 (S.D. Ohio)."  Your letter must state:  the date(s), and corresponding price(s) and number(s) of shares, of all purchases and sales of Chemed capital stock you made during the Class Period.  In addition, you must include your name, address, telephone number, and your signature.  You must <u>mail</u> your written, signed exclusion request so that it is **received at the following address no later than [DATE]**:

*Chemed Corporation Securities Litigation Exclusions*
*Chemed Securities Litigation*
Claims Administrator
c/o Gilardi & Co. LLC
P.O. Box ___
Corte Madera, CA  94976-0990

You cannot exclude yourself from the Settlement Class by telephone or by e-mail.  Any attempt to do so will be ineffective and invalid.  Also, your request for exclusion from the Settlement Class will be invalid if either (1) you fail to provide all of the information specified above, or (2) it is not received at the above address by the date specified.

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the Settlement.  You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue (or continue to sue) the Defendants and the other Releasees individually in the future.

**15.     If I do not exclude myself, can I sue the Defendants and the other Releasees for the same thing later?**

No.  Unless you exclude yourself, you give up any rights to sue the Defendants and the other Releasees for any and all Settled Claims.  **If you have a pending lawsuit, speak to your lawyer in that case immediately.**  You **must** exclude yourself from *this* Settlement Class to continue your own lawsuit.  Remember, the exclusion deadline is **[DATE]**.

**16.     If I exclude myself, can I get money from the proposed Settlement?**

No.  If you exclude yourself, do not send in a Proof of Claim form to ask for any money.  But you may exercise any right you may have to sue, continue to sue, or be part of any different lawsuit against the Defendants and the other Releasees.

## THE LAWYERS REPRESENTING THE SETTLEMENT CLASS

**17.     Do I have a lawyer in this case?**

The Court ordered that the law firms below represent the Settlement Class.  These lawyers are called Co-Lead Counsel.  You will not be separately charged for these lawyers and the services they provide.  The Court will determine the amount of Co-Lead Counsel's fees and expenses, which will be paid from the Settlement Fund.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| | |
|---|---|
| Samuel H. Rudman | Jonathan Gardner |
| Evan J. Kaufman | Mark S. Goldman |
| Edward Y. Kroub | Carol C. Villegas |
| Robbins Gellar Rudman & Dowd LLP | Labaton Sucharow LLP |
| 58 South Service Road, Suite 200 | 140 Broadway, 34th Floor |
| Melville, NY 11747 | New York, NY 10005 |
| (800) 449-4900 | (888) 219-6877 |

**18.**    <u>**How will the lawyers be paid?**</u>

At the Settlement Hearing, or at such other time as the Court may order, Co-Lead Counsel will ask the Court to award them, from the Settlement Fund, attorneys' fees of no more than 33% of the Settlement Fund, plus any interest on such amount at the same rate as earned by the Settlement Fund, and litigation expenses (such as the cost of experts) that have been incurred in pursuing the Action, which may include the costs and expenses (including lost wages) of Lead Plaintiffs.  The request for litigation expenses will not exceed $200,000, plus interest on the expenses at the same rate as may be earned by the Settlement Fund.

**OBJECTING TO THE SETTLEMENT**

You can tell the Court that you do not agree with the Settlement or some part of it.

**19.**    <u>**How do I tell the Court that I do not like the proposed Settlement?**</u>

If you are a Settlement Class Member you can object to the Settlement or any of its terms, the proposed Plan of Allocation, and/or the application by Co-Lead Counsel for an award of attorneys' fees and expenses.  You may write to the Court explaining your objection.  You may give reasons why you think the Court should not approve any or all of the Settlement terms or arrangements.  The Court will consider your views if you file a proper objection within the deadline and according to the following procedures:

To object, you must send a signed letter stating that you object to the proposed Settlement in *In re Chemed Corporation Securities Litigation*, File No. 1:12-cv-028 (S.D. Ohio).  You must include your name, address, telephone number, and your signature; identify :  the date(s), and corresponding price(s) and number(s) of shares, of all purchases and sales of Chemed capital stock you made during the Class Period; and state the reasons why you object to the Settlement.  Your objection must be filed with the Court and mailed to all the following counsel no later than [DATE]:

| COURT | CO-LEAD COUNSEL DESIGNEES | DEFENDANTS' COUNSEL DESIGNEE |
|---|---|---|
| Clerk of the Court | Evan J. Kaufman | Timothy G. Cameron |
| United States District Court | Robbins Geller Rudman & Dowd LLP | Cravath, Swaine & |
| Southern District of Ohio | 58 South Service Road, Suite 200 | Moore LLP |
| Western Division | Melville, NY 11747 | Worldwide Plaza |
| Potter Stewart United States | | 825 Eighth Avenue |
| Courthouse | Jonathan Gardner | New York, NY 10019 |
| 100 East Fifth Street | Labaton Sucharow LLP | |
| Cincinnati, Ohio 45202 | 140 Broadway, 34th Floor | |
| | New York, NY 10005 | |

You do not need to go to the Settlement Hearing to have your written objection considered by the Court.  If you want to speak at the Settlement Hearing, any Settlement Class Member who has not previously submitted a request for exclusion from the Settlement Class and who has

complied with the procedures set out in this Question and Question 23 below may also appear and be heard, to the extent allowed by the Court, concerning the Settlement, the Plan of Allocation, or Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of expenses.  Any such objector may appear in person or arrange, at that objector's expense, for a lawyer to represent them at the Settlement Hearing.

**20.** **What is the difference between objecting and seeking exclusion?**

Objecting is simply telling the Court that you do not like something about the proposed Settlement.  You can object only if you remain in the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

**THE COURT'S SETTLEMENT HEARING**

The Court will hold a hearing to decide whether to approve the proposed Settlement.  You may attend and you may ask to speak, but you do not have to do either.

**21.** **When and where will the Court decide whether to approve the proposed Settlement?**

The Court will hold the Settlement Hearing at __:____ .m. on _____ ___, 2014, at the United States District Court, Southern District of Ohio, Western Division, Potter Stewart United States Courthouse, 100 East Fifth Street, Cincinnati, Ohio 45202.  At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate.  At the hearing, the Court will also consider the proposed Plan of Allocation for the proceeds of the Settlement and the application of Co-Lead Counsel for attorneys' fees and payment of expenses.  The Court will take into consideration any written objections filed in accordance with the instructions at Question 19.  The Court also may listen to people who have properly indicated an intention to speak at the hearing, but decisions regarding the conduct of the hearing will be made by the Court.  *See* Question 23 for more information about speaking at the hearing.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

You should be aware that the Court may change the date and time of the Settlement Hearing.  If you want to come to the hearing, you should check with Co-Lead Counsel beforehand to be sure that the date and/or time has not changed.

**22.** **Do I have to come to the hearing?**

No.  Co-Lead Counsel will answer questions the Court may have.  But you are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you filed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary.  Settlement Class Members do not need to appear at the hearing or take any other action to indicate their approval.

**23.** <u>**May I speak at the hearing?**</u>

If you object to the Settlement, you may ask the Court for permission to speak at the Settlement Hearing.  To do so, you must include with your objection (*see* Question 19 above) a statement that it is your "Notice of Intention to Appear in the *In re Chemed Corporation Securities Litigation*, File No. 1:12-cv-028 (S.D. Ohio)."  Persons who intend to object to the Settlement, the Plan of Allocation, and/or counsel's application for an award of attorneys' fees and expenses and desire to present evidence at the hearing must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the Settlement Hearing.  Unless otherwise ordered by the Court, you cannot speak at the Settlement Hearing if you have excluded yourself from the Settlement Class or if you have not provided written notice of your objection and intention to speak at the hearing in accordance with the procedures described in Questions 19 and 23.

<strong>IF YOU DO NOTHING</strong>

**24.** <u>**What happens if I do nothing at all?**</u>

If you do nothing, you will get no money from this Settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against Defendants and other Releasees about the Settled Claims in this case, ever again.  To share in the Net Settlement Fund you must submit a Proof of Claim form (*see* Question 11).  To start, continue or to be part of any other lawsuit against the Defendants and the other Releasees about the Settled Claims in this case, you must exclude yourself from this Settlement Class (*see* Question 14).

<strong>GETTING MORE INFORMATION</strong>

**25.** <u>**Are there more details about the proposed Settlement?**</u>

This Notice summarizes the proposed Settlement.  More details are in the Stipulation.  You can get a copy of the Stipulation by writing to any one of Co-Lead Counsel, or by visiting www.chemedsecuritiessettlement.com, www.labaton.com, www.rgrdlaw.com.

You can also call the Claims Administrator at [•] toll free; write to the Claims Administrator at *Chemed Securities Litigation*, c/o Gilardi & Co. LLC, P.O. Box 990, Corte Madera, CA  94976-0990; or visit www.chemedsecuritiessettlement.com where you will find answers to common questions about the Settlement, a Proof of Claim form, and other information to help you determine whether you are a Settlement Class Member and whether you are eligible for a payment.

**26.** <u>**How do I get more information?**</u>

For even more detailed information concerning the matters involved in this Action, you may refer to the pleading, to the Stipulation, to the Orders entered by the Court and to the other papers filed in the Action, which may be inspected during regular business hours at the Office of the Clerk of the United States District Court, Southern District of Ohio, Western Division, Potter Stewart United States Courthouse, 100 East Fifth Street, Cincinnati, Ohio 45202.

**SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES**

If you purchased Chemed capital stock during the period from February 15, 2010 through May 2, 2013, inclusive, (the "Class Period") for the beneficial interest of a person or organization other than yourself, the Court has directed that WITHIN SEVEN (7) DAYS OF YOUR RECEIPT OF THIS NOTICE, you either (i) provide the Claims Administrator the name and last known address of each person or organization for whom or which you purchased Chemed capital stock during the Class Period or (ii) request additional copies of this Notice and the Proof of Claim form, which will be provided to you free of charge, and within seven (7) days of receipt mail the Notice and Proof of Claim form directly to the beneficial owners of that Chemed capital stock. If you choose to follow alternative procedure (ii), the Court has directed that, upon such mailing, you must send a statement to the Claims Administrator confirming that the mailing was made as directed. You are entitled to reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expense and the cost of ascertaining the names and addresses of beneficial owners. Those expenses will be paid upon request and submission of appropriate supporting documentation. All communications concerning the foregoing should be addressed to the Claims Administrator:

*In re Chemed Corporation Securities Litigation*
Claims Administrator
c/o Gilardi & Co. LLC
P.O. Box ____
Corte Madera, CA 94976-0990

Dated:         Cincinnati, Ohio
                     _____, 2014

BY ORDER OF THE COURT

## TABLE A

**Chemed Corporation Common Stock**
**Calculation of Average Closing Price During 90 Day Periods Following Corrective Disclosures**

| Date | Closing Price | Average Closing Price 11/16/2011 Through Date | Date | Closing Price | Average Closing Price 05/03/2013 Through Date |
|---|---|---|---|---|---|
| 11/16/2011 | $ 50.65 | $ 50.65 | 5/3/2013 | $ 68.00 | $ 68.00 |
| 11/17/2011 | $ 50.00 | $ 50.33 | 5/6/2013 | $ 68.78 | $ 68.39 |
| 11/18/2011 | $ 49.77 | $ 50.14 | 5/7/2013 | $ 68.17 | $ 68.32 |
| 11/21/2011 | $ 49.95 | $ 50.09 | 5/8/2013 | $ 67.52 | $ 68.12 |
| 11/22/2011 | $ 49.82 | $ 50.04 | 5/9/2013 | $ 67.08 | $ 67.91 |
| 11/23/2011 | $ 50.00 | $ 50.03 | 5/10/2013 | $ 63.90 | $ 67.24 |
| 11/25/2011 | $ 49.83 | $ 50.00 | 5/13/2013 | $ 64.87 | $ 66.90 |
| 11/28/2011 | $ 51.33 | $ 50.17 | 5/14/2013 | $ 65.87 | $ 66.77 |
| 11/29/2011 | $ 51.39 | $ 50.30 | 5/15/2013 | $ 66.49 | $ 66.74 |
| 11/30/2011 | $ 53.66 | $ 50.64 | 5/16/2013 | $ 66.67 | $ 66.74 |
| 12/1/2011 | $ 54.36 | $ 50.98 | 5/17/2013 | $ 68.18 | $ 66.87 |
| 12/2/2011 | $ 53.29 | $ 51.17 | 5/20/2013 | $ 68.33 | $ 66.99 |
| 12/5/2011 | $ 53.36 | $ 51.34 | 5/21/2013 | $ 68.54 | $ 67.11 |
| 12/6/2011 | $ 50.52 | $ 51.28 | 5/22/2013 | $ 67.69 | $ 67.15 |
| 12/7/2011 | $ 51.13 | $ 51.27 | 5/23/2013 | $ 67.73 | $ 67.19 |
| 12/8/2011 | $ 49.55 | $ 51.16 | 5/24/2013 | $ 68.27 | $ 67.26 |
| 12/9/2011 | $ 50.20 | $ 51.11 | 5/28/2013 | $ 68.45 | $ 67.33 |
| 12/12/2011 | $ 49.96 | $ 51.04 | 5/29/2013 | $ 68.38 | $ 67.38 |
| 12/13/2011 | $ 48.24 | $ 50.90 | 5/30/2013 | $ 69.10 | $ 67.47 |
| 12/14/2011 | $ 49.43 | $ 50.82 | 5/31/2013 | $ 70.02 | $ 67.60 |
| 12/15/2011 | $ 50.05 | $ 50.79 | 6/3/2013 | $ 70.87 | $ 67.76 |
| 12/16/2011 | $ 50.05 | $ 50.75 | 6/4/2013 | $ 70.49 | $ 67.88 |
| 12/19/2011 | $ 49.39 | $ 50.69 | 6/5/2013 | $ 70.65 | $ 68.00 |
| 12/20/2011 | $ 50.79 | $ 50.70 | 6/6/2013 | $ 71.00 | $ 68.13 |
| 12/21/2011 | $ 51.32 | $ 50.72 | 6/7/2013 | $ 71.78 | $ 68.27 |
| 12/22/2011 | $ 52.30 | $ 50.78 | 6/10/2013 | $ 72.13 | $ 68.42 |
| 12/23/2011 | $ 52.04 | $ 50.83 | 6/11/2013 | $ 71.46 | $ 68.53 |
| 12/27/2011 | $ 52.49 | $ 50.89 | 6/12/2013 | $ 72.00 | $ 68.66 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12/28/2011 | $ | 51.24 | $ | 50.90 | 6/13/2013 | $ 72.83 | $ 68.80 |
| 12/29/2011 | $ | 51.91 | $ | 50.93 | 6/14/2013 | $ 72.53 | $ 68.93 |
| 12/30/2011 | $ | 51.21 | $ | 50.94 | 6/17/2013 | $ 72.86 | $ 69.05 |
| 1/3/2012 | $ | 52.38 | $ | 50.99 | 6/18/2013 | $ 74.02 | $ 69.21 |
| 1/4/2012 | $ | 51.18 | $ | 50.99 | 6/19/2013 | $ 73.71 | $ 69.34 |
| 1/5/2012 | $ | 51.34 | $ | 51.00 | 6/20/2013 | $ 73.16 | $ 69.46 |
| 1/6/2012 | $ | 51.98 | $ | 51.03 | 6/21/2013 | $ 73.50 | $ 69.57 |
| 1/9/2012 | $ | 53.34 | $ | 51.10 | 6/24/2013 | $ 73.02 | $ 69.67 |
| 1/10/2012 | $ | 53.19 | $ | 51.15 | 6/25/2013 | $ 73.43 | $ 69.77 |
| 1/11/2012 | $ | 53.60 | $ | 51.22 | 6/26/2013 | $ 74.44 | $ 69.89 |
| 1/12/2012 | $ | 52.75 | $ | 51.26 | 6/27/2013 | $ 73.16 | $ 69.98 |
| 1/13/2012 | $ | 53.77 | $ | 51.32 | 6/28/2013 | $ 72.43 | $ 70.04 |
| 1/17/2012 | $ | 54.13 | $ | 51.39 | 7/1/2013 | $ 73.13 | $ 70.11 |
| 1/18/2012 | $ | 55.10 | $ | 51.48 | 7/2/2013 | $ 72.95 | $ 70.18 |
| 1/19/2012 | $ | 55.39 | $ | 51.57 | 7/3/2013 | $ 73.06 | $ 70.25 |
| 1/20/2012 | $ | 56.70 | $ | 51.68 | 7/5/2013 | $ 73.97 | $ 70.33 |
| 1/23/2012 | $ | 57.22 | $ | 51.81 | 7/8/2013 | $ 74.25 | $ 70.42 |
| 1/24/2012 | $ | 57.53 | $ | 51.93 | 7/9/2013 | $ 73.50 | $ 70.49 |
| 1/25/2012 | $ | 58.03 | $ | 52.06 | 7/10/2013 | $ 73.80 | $ 70.56 |
| 1/26/2012 | $ | 57.23 | $ | 52.17 | 7/11/2013 | $ 74.09 | $ 70.63 |
| 1/27/2012 | $ | 57.24 | $ | 52.27 | 7/12/2013 | $ 75.34 | $ 70.73 |
| 1/30/2012 | $ | 56.49 | $ | 52.36 | 7/15/2013 | $ 75.64 | $ 70.82 |
| 1/31/2012 | $ | 56.14 | $ | 52.43 | 7/16/2013 | $ 75.88 | $ 70.92 |
| 2/1/2012 | $ | 57.28 | $ | 52.52 | 7/17/2013 | $ 74.74 | $ 71.00 |
| 2/2/2012 | $ | 58.29 | $ | 52.63 | 7/18/2013 | $ 75.03 | $ 71.07 |
| 2/3/2012 | $ | 58.74 | $ | 52.75 | 7/19/2013 | $ 69.26 | $ 71.04 |
| 2/6/2012 | $ | 57.91 | $ | 52.84 | 7/22/2013 | $ 70.16 | $ 71.02 |
| 2/7/2012 | $ | 57.99 | $ | 52.93 | 7/23/2013 | $ 71.56 | $ 71.03 |
| 2/8/2012 | $ | 58.42 | $ | 53.03 | 7/24/2013 | $ 71.35 | $ 71.04 |
| 2/9/2012 | $ | 57.69 | $ | 53.11 | 7/25/2013 | $ 71.46 | $ 71.05 |
| 2/10/2012 | $ | 57.44 | $ | 53.18 | 7/26/2013 | $ 72.87 | $ 71.08 |
| 2/13/2012 | $ | 57.24 | $ | 53.25 | 7/29/2013 | $ 72.02 | $ 71.09 |
| | | | | | 7/30/2013 | $ 72.82 | $ 71.12 |
| | | | | | 7/31/2013 | $ 70.59 | $ 71.11 |